## Seldomridge v. Seldomridge et al.

*Charles G. Baker*, for rule; *Amos E. Burkholder*, contra.

GROFF, J., Jan. 18, 1930.—This is an action brought in the Court of Common Pleas of Lancaster County, the original writ being the process known as an attachment at common law, wherein Margaret M. Seldomridge is the plaintiff and S. Melvin Seldomridge the defendant, and H. S. Shirk, administrator

of the estate of the said S. Melvin Seldomridge, presumed decedent, is garnishee.

It seems from the pleadings that Margaret M. Seldomridge, the plaintiff, was married to S. Melvin Seldomridge on July 6, 1909; that they lived and cohabited together as man and wife until April 1, 1914, when the defendant absented himself from the home of the plaintiff and has not been heard of since. At the time of the desertion the parties were the parents of two children—Anna Dorothea Seldomridge, who was born on April 24, 1910, and Marian Ruth Seldomridge, who was born Feb. 2, 1912. From that time to the present the defendant's whereabouts has been unknown. The plaintiff has maintained herself and children from the day her husband absented himself to the time of the bringing of this suit. The plaintiff, however, was divorced from the defendant on July 7, 1923, by the Court of Common Pleas of Lancaster County, to May Term, 1923, No. 9. The defendant, on Nov. 19, 1928, was decreed a presumed decedent by the Orphans' Court of Lancaster County, the proceedings appearing in that court to May Term, 1928, No. 30. They established the legal presumption of defendant's death as of June 13, 1915. The plaintiff claims that she necessarily expended and laid out for her support and maintenance from the time of the desertion until the time she obtained her divorce, on July 7, 1923, the sum of $2886, and that she laid out and expended for the support, maintenance and education of her minor children, from the time of the desertion of defendant to April 1, 1929, the sum of $4680. These two sums she seeks to recover in this proceeding from the administrator of the decedent's estate from moneys which have recently come into his hands and since her divorce from her husband.

The question is, can she recover these two sums of money in the present proceedings? She claims that she can under the Act of Feb. 22, 1718, 1 Sm. Laws, 99, and under the Act of Assembly approved May 4, 1855, P. L. 430.

In Von Helmold v. Von Helmold, 19 Pa. Superior Ct. 217, the syllabus reads as follows:

"The Act of May 4, 1855, P. L. 430, which provides that 'whenever any husband from drunkenness, profligacy or other cause shall neglect or refuse to provide for his wife, or shall desert her, she shall have all the rights and privileges secured to a *feme sole* trader under the Act of Feb. 22, 1718, 1 Sm. Laws, 99,' does not confer upon deserted wives all the privileges set forth in the Act of 1718, but only those which inhere in woman as *feme sole* traders, namely, those affecting their rights in their own estate and earnings, and their right to trade. The act does not sustain an application for an attachment against the real estate of an absent husband by a deserted wife."

We, therefore, conclude that if this plaintiff can recover she must do so under section 4 of the Act of 1718, 1 Sm. Laws, 99, which reads as follows:

"But if such absent husband, having his health and liberty, stays away so long from his wife and children, without making such provision for their maintenance before or after his going away, till they are like to become chargeable to the town or place where they inhabit; or in case such husband doth or shall live in adultery, or cohabit unlawfully with another woman, and refuses or neglects within seven years next after his going to sea, or departing this province, to return to his wife, and cohabit with her again; then, and in every such case, the lands, tenements and estate, belonging to such husbands, shall be and are hereby made liable and subject to be seized and taken in execution, to satisfy any sum or sums of money, which the wives of such husbands, or guardians of their children, shall necessarily expend or lay out for their support and maintenance; which execution shall be founded upon

process of attachment against such estate, wherein the absent husband shall be made defendant; any law or usage to the contrary in any wise notwithstanding."

If the defendant had lands, tenements and estate belonging to him, and if the plaintiff was not estopped by the death of the defendant, or by the divorce, or the statute of limitations, and her proceedings were regular, she then could recover under the act of assembly above cited.

This proceeding was originally started by an attachment as an original process. That writ seemed to have been used in England and in the United States prior to and at the time the statute of 1718 above referred to was enacted. That statute apparently intended that the writ of attachment could be used as an original writ in proceedings under the act.

In 3 Blackstone, 279, we find that attachment was a common law writ called attachment or pone from its language, "pone per vadium et salvos plegios," and in 6 Corpus Juris, § 3, at page 29, we find that "this was a writ, not issuing out of chancery, but out of the Court of Common Pleas, being grounded on the non-appearance of defendant at the return of the original writ, and thereby the sheriff was commanded to attach him, by taking gage, that is, certain of his goods which he was to forfeit if he did not appear, or by making him find safe pledges or sureties who were to be amerced in case of his non-appearance."

Its purpose apparently was, first, to compel the appearance of the debtor, and, second, to act in rem, that is, to create a lien, as provided in the Act of 1718, against his lands, tenements and estate, which he owned at the time of the attachment and which he had not given, granted or alienated from his wife and children. If he had granted or alienated his lands, tenements and estate which he owned at and prior to the time of the attachment, for the purpose of preventing his wife from obtaining what was justly due her, then, under section 2 of the said Act of 1718, that gift, grant, conveyance, etc., would be null and void.

In Miller v. Miller, 4 Dist. R. 309, reading from the syllabus, we find that "a wife who has been deserted by her husband may sue him for her support during the time he has neglected to support her. The Acts of 1718 and 1855, authorizing such suit, have not been repealed by the Act of June 8, 1893."

The Miller case, supra, and other cases which we have examined, as well as an examination of the common law and the various books on practice, leads us to conclude that the proper practice in issuing an attachment was not followed in this case. It would seem that an affidavit stating the facts sufficiently to bring the case within the statute should first be filed and presented to court (we doubt if the affidavit filed in this case was sufficient under the act of assembly) ; and that the court should then allow and direct the writ of attachment to issue accordingly and fix special bail so that the defendant's lands, tenements and estate might be relieved of the lien thereof in case the bail as directed was entered. That was not done in this case. An affidavit was apparently filed with the prothonotary, and the writ of attachment was issued as the original process, without leave of court, the administrator of the decedent defendant being mentioned as one of the defendants.

Forgetting all technical defenses that might arise, we feel that the plaintiff is not entitled to the judgment she seeks in this proceeding for other reasons. The statement filed in the case shows that on Nov. 19, 1928, the defendant was decreed dead, as of June 13, 1915. The attachment was issued Sept. 13, 1929, almost ten months after the decree of the Orphans' Court was entered

declaring defendant dead and fourteen years and three months after the time that the Orphans' Court said the legal presumption of death arose.

At the time of issuing the attachment the real estate had passed to the persons entitled to the same under the intestate laws of Pennsylvania, under the Fiduciaries Act of June 7, 1917, P. L. 477, section 6, paragraph *(f)*, which reads as follows:

"Whenever the said court shall enter a decree that the presumption of death of any person has been established, and such decree shall be confirmed absolutely, the real estate of the presumed decedent shall pass and devolve as in the case of actual death, and the persons entitled by will or under the intestate laws may enter and take possession; . . . ." and paragraph *(g)* reads: "The executor or administrator to whom letters have been issued upon the estate of a presumed decedent, as aforesaid, shall administer the estate in the same manner and with the same effect as the same would be administered under existing laws of this commonwealth, if the presumed decedent were in fact dead. . . ."

It is also a well known law in the State of Pennsylvania that upon a man's death his personal property passes to his administrator for the payment of his debts. This had occurred prior to the time of plaintiff's starting her suit, and that fact was well known to her at the time she started her proceedings.

The act upon which plaintiff relies is " . . . or in case such husband doth or shall live in adultery, or cohabit unlawfully with another woman, and refuses or neglects within seven years next after his going to sea, or departing this province, to return to his wife, and cohabit with her again; then, and in every such case, the lands, tenements and estate, belonging to such husbands, shall be and are hereby made liable and subject to be seized and taken in execution . . . ." the whole remedy contemplates that the husband is alive and in being at the time the action is instituted. The act certainly cannot mean that this proceeding, which acts both in person and *in rem,* could be instituted against a party who is dead.

In the case of Longbotham v. Longbotham, 14 Lanc. Law Rev. 383, a case somewhat similar to this, Waddell, P. J., in his opinion, said:

"The object of the attachment is to compel the appearance of the defendant and create a lien in favor of the plaintiff upon all the property levied upon. This lien will continue until the plaintiff's rights are properly adjudicated.

"If we are correct in holding that the attachment referred to in the act is to be regarded as an original process, then all subsequent proceedings should be conducted as if a summons only had issued.

"The pleadings, issue and trial should be the same as if the proceedings had commenced by summons in *assumpsit* or debt under the old practice. This being so, there was no propriety in appointing trustees to take possession of the property and close up the defendant's estate. Such a course would be proper under the act relating to domestic attachments, but, as we have said, this act has no application to the proceedings in this case."

In other words, this action being the same as a suit in *assumpsit* or trespass, except the original writ being called an attachment, and not a summons, the plaintiff here could not, in our opinion, attach goods and chattels in the hands of the administrator, but would be obliged to do one of two things— the defendant having been dead at the time the process was issued, the plaintiff would either have to bring suit against the administrator of the decedent and recover judgment and then collect that judgment through the Orphans' Court, or present her claim in the Orphans' Court. She could not sue the

deceased as though he were living by a suit begun by attachment any more than she could sue him in a suit begun by *assumpsit* if he were dead. The action necessarily would be against the decedent's representatives. He owned nothing and had nothing at the time the attachment was issued. It had all passed, under the law, to those entitled thereto, not by his own act for the purpose of defrauding his wife out of what might have been justly due her, but by the act of the law, and that transfer cannot be set aside. Then, too, this woman having been divorced from her husband more than six years before her action was brought, the question might arise whether the statute of limitations would run against her, but we are not called upon to discuss that question.

The record shows that there is in excess of $10,000 here in the hands of the administrator and garnishee. The sole heirs to this estate are two minor children. It does not appear from the record that guardians have been appointed for them or that anybody representing them had notice of this proceeding. The garnishee who represents this estate has done nothing more to defend the property in his hands and the interest of the wards than to answer the interrogatories filed.

The attachment issued as an original process to compel the appearance of the defendant and to obtain a lien upon his lands, tenements and estate was issued after his death and is now being treated as a domestic attachment, which is foreign to the purpose of the original writ issued in this case.

For the reasons stated above,. we cannot enter judgment for the plaintiff, and, therefore, discharge the rule to show cause why judgment should not be entered against H. S. Shirk, administrator of the estate of S. Melvin Seldomridge, presumed decedent, garnishee, and in favor of the plaintiff.

Rule discharged.

From George Ross Eshleman, Lancaster, Pa.